# STATE OF MICHIGAN

# COURT OF APPEALS

CROWN ENTERPRISES, INC., DIBDETROIT LLC, RIVERVIEW-TRENTON RAILROAD COMPANY, CENTRAL TRANSPORT LLC, and DETROIT INTERNATIONAL BRIDGE COMPANY,

Plaintiffs-Appellants,

v

STATE OF MICHIGAN, GOVERNOR, DEPARTMENT OF TRANSPORTATION, and MICHIGAN STRATEGIC FUND,

Defendants-Appellees.

UNPUBLISHED
May 8, 2018

No. 340039
Court of Claims
LC No. 16-000317-MZ

Before: SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Plaintiffs appeal by right the Court of Claims order granting summary disposition in favor of defendants. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This case arises from the proposed Gordie Howe International Bridge (the Bridge) project, a proposed international bridge linking Windsor, Ontario, Canada, and Detroit, Michigan. Plaintiffs are corporate entities that own properties within the Bridge footprint, including the Detroit International Bridge Company (DIBC), which owns and operates the Ambassador Bridge.

On January 14, 2009, the Federal Highway Administration (FHWA) issued a Record of Decision (ROD), approving the proposed location and footprint of the Bridge project. The ROD gave rise to extensive litigation in federal court. In June 2012, Michigan and Canada executed a Crossing Agreement, which provided a governance structure for the Bridge and provided that Canada would pay the costs for the project. On October 1, 2015, defendant, Michigan Department of Transportation (MDOT), sent letters to plaintiffs, indicating that "[l]and acquisition for the new Gordie Howe International Bridge Project . . . is underway." The letters informed plaintiffs that they were "receiving this letter, because our review of pertinent title work suggests that you own real property that will be affected by the Project." The letters also

-1-

indicated that "MDOT is initiating the appraisal and environmental review processes necessary to compile good faith written offers for the purchase of property and/or property rights necessary for the Project. As part of this process, MDOT requires entry upon your Property." MDOT stated that it would need access to the property for inspection in accord with the uniform condemnation procedures act (UCPA), MCL 213.51 *et seq*.

On December 2, 2016, MDOT sent "Good Faith Offers" (GFOs) to plaintiffs regarding the parcels of property they owned within the project footprint. In those letters, MDOT informed plaintiffs that it "has determined it necessary to acquire your property . . . ." MDOT included a written appraisal, made an offer to purchase the pertinent parcels, and indicated that the offer was valid until early January 2017. The letters indicated that, in the event that MDOT and the affected property owners were unable to arrive at an agreement, MDOT "may pursue a condemnation case" under the UCPA.

Instead of responding to the GFO's, plaintiffs commenced this suit in the Court of Claims on December 29, 2016. In an amended complaint, plaintiffs sought declaratory and injunctive relief on a number of legal theories.[1] Defendants moved for summary disposition, arguing that plaintiffs' claims were barred because they failed to comply with the notice provision in MCL 600.6431(1). The Court of Claims agreed and entered an order granting summary disposition in defendants' favor.

Plaintiffs-appellants filed this appeal by right.[2]

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

On appeal, plaintiffs argue that the Court of Claims erred by finding that their claims were barred under MCL 600.6431(1). "This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Whether plaintiffs complied with the statutory notice provision in MCL 600.6431(1) involves a question of law that this Court reviews de novo. *Rusha v Dep't of Corrections*, 307 Mich App 300, 304; 859 NW2d 735 (2014).

### B. ANALYSIS

---

[1] After plaintiffs commenced this suit in the Court of Claims, MDOT began condemnation proceedings under the UPCA in Wayne Circuit Court.

[2] Plaintiffs also filed a bypass application in the Michigan Supreme Court, which was denied. *Crown Enterprises, Inc v Michigan*, ___ Mich ___ (2018).

The state may impose conditions on claimants who seek to file a suit against the state and its entities. *McCahan v Brennan*, 492 Mich 730, 736; 822 NW2d 747 (2012). "One such condition on the right to sue the state is the notice provision of the Court of Claims Act, MCL 600.6431 . . . ." *Id.* The statute provides in relevant part as follows:

> No claim may be maintained against the state unless the claimant, *within 1 year after such claim has accrued, files in the office of the clerk of the court of claims either a written claim or a written notice of intention to file a claim against the state or any of its departments*, commissions, boards, institutions, arms or agencies, stating the time when and the place where such claim arose and in detail the nature of the same and of the items of damage alleged or claimed to have been sustained, which claim or notice shall be signed and verified by the claimant before an officer authorized to administer oaths. [MCL 600.6431(1) (emphasis added).]

"The purpose of MCL 600.6431 is to establish those conditions precedent to pursuing a claim against the state." *Fairley v Dep't of Corr*, 497 Mich 290, 292; 871 NW2d 129 (2015). Adherence to the statute "is an unambiguous condition precedent to sue the state, and a claimant's failure to comply strictly with this notice provision warrants dismissal of the claim, even if no prejudice resulted." *Rusha*, 307 Mich App at 307 (quotation marks and citation omitted).

In this case, it is undisputed that plaintiffs filed their complaint and a notice on December 29, 2016. The issue is when plaintiffs' claims accrued for purposes of MCL 600.6431(1). Generally, a claim accrues "*at the time the wrong upon which the claim is based was done* regardless of the time when damage results." MCL 600.5827 (emphasis added). The Michigan Supreme Court has clarified that "the 'wrong' . . . is the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty." *Frank v Linkner*, 500 Mich 133, 147; 894 NW2d 574 (2017) (quotation marks and citation omitted). In the context of MCL 600.6431(1), this Court has held that a claim accrues "when [a] suit may be maintained thereon." *Cooke Contracting Co v State*, 55 Mich App 336, 338; 222 NW2d 231 (1974).

Here, the Court of Claims found that plaintiffs' claims can be distilled into two distinct categories: "(1) a series of challenges to Defendants' authority to execute the 2012 Crossing Agreement; (2) a series of challenges to Defendants' authority to take any action in reliance on the Crossing Agreement, including any actions taken or funds purportedly spent as part of efforts to condemn Plaintiffs' property." A review of plaintiffs' claims supports that finding. Accordingly, all of the claims turn on the validity of the Crossing Agreement, and therefore, the "wrong upon which the claim[s] [are] based" is the execution of the Crossing Agreement. Stated differently, the claims accrued at the time the Crossing Agreement was signed in June 2012, so plaintiffs had until June 2013 to file a claim or a written notice of a claim in the Court of Claims. Plaintiffs, however, did not file suit until December 2016.

Nevertheless, plaintiffs argue that their claims did not accrue in June 2012 because they lacked standing until MDOT began condemnation proceedings. We disagree.

In *Lansing Schools Ed Ass'n (LSEA) v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010), the Michigan Supreme Court explained the standing doctrine as follows:

> We hold that Michigan standing jurisprudence should be restored to a limited, prudential doctrine that is consistent with Michigan's long-standing historical approach to standing. Under this approach, a litigant has standing whenever there is a legal cause of action. *Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment.* Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. *A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large* or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [Emphasis added.]

MCR 2.605 governs actions seeking a declaratory judgment and it provides in relevant part that "[i]n a case of *actual controversy* within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1) (emphasis added). This Court has explained the "actual controversy" threshold as follows:

> An 'actual controversy' under MCR 2.605(A)(1) exists when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve legal rights. The requirement prevents a court from deciding hypothetical issues. However, by granting declaratory relief in order to guide or direct future conduct, courts are not precluded from reaching issues before actual injuries or losses have occurred. *The essential requirement of an 'actual controversy' under the rule is that the plaintiff pleads and proves facts that demonstrate an adverse interest necessitating the sharpening of the issues raised.* [*UAW v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012) (citations omitted) (emphasis added).]

Here, at the time the Crossing Agreement was signed, there was an "actual controversy," and plaintiffs could have plead and proved facts that demonstrated an "adverse interest necessitating the sharpening of the issues raised." *Id*. Plaintiffs' complaint in this case not only challenges the condemnation proceedings but also challenges the legality of the Crossing Agreement and defendants' authority to enter into or take actions in furtherance of the Crossing Agreement. Thus, plaintiffs challenge the validity of the action taken when the Crossing Agreement was signed, which means that in 2012, plaintiffs had an "adverse interest necessitating the sharpening of the issues raised," such that they had standing to challenge the Crossing Agreement. *Id*. This is because when the Crossing Agreement was signed it was apparent that MDOT would need to acquire the properties located within the Bridge's footprint. And, as evidenced by federal litigation, plaintiffs were aware of their claims in 2012. For example, in federal litigation, the DIBC indicated that it, among others, owned many of the properties in the project's footprint. The DIBC also stated that it, among others, was in the process of expanding the Ambassador Bridge and that construction of the Bridge would infringe on the DIBC's franchise rights. The DIBC specifically referred to the Crossing Agreement in the

complaint, showing that plaintiffs were aware of the potential financial and business interest they had that would potentially be impacted by the Bridge project. These interests were sufficient to show the requisite adverse interests necessary to establish standing in 2012 when the Crossing Agreement was signed. Indeed, in their complaint, plaintiffs refer to the damage that the Bridge would cause to their business interests.

Plaintiffs also contend that they did not have standing in 2012 because they had not suffered any harm at that time. However, they need not suffer actual injuries or losses in order to establish that there is an actual controversy under MCR 2.605. *Id*. When the Crossing Agreement was signed, there was an "actual controversy" between plaintiffs and defendants, and it was proper for plaintiffs to seek an adjudication of their rights at that time before the Crossing Agreement ripened into a violation of the law that interfered with plaintiffs' property and business interests. The actual controversy involved the impact that the Crossing Agreement would have on plaintiffs' property and business interests. The harm was the signing of the Crossing Agreement and the harms that flowed from the agreement, which provided authorization and a framework for all subsequent actions in furtherance of the Bridge project. Moreover, plaintiffs had a "special interest" in ensuring that implementation of the Crossing Agreement would not violate their property rights or unlawfully interfere with their business operations, and this interest was "different from any rights or interests of the public at large." *Id*. at 497.

Plaintiffs' reliance on *Mays v Snyder*, ___ Mich App ___; ___ NW2d ___ (2018) (Docket No. 335555), is misplaced. In *Mays*, the plaintiffs sued the state for injuries arising from the "Flint water crises." *Id*. at ___; slip op at 3. The state argued that the plaintiffs failed to provide notice of their intent to file suit within the notice period set forth in MCL 600.6431. *Id*. at ___; slip op at 8. This Court rejected that argument, explaining as follows:

Defendants argue that plaintiffs' claims accrued, and the statutory notice period began to run, in either June of 2013, when plaintiffs allege that the state "ordered and set in motion the use of highly corrosive and toxic Flint river water knowing that the [water treatment plant] was not ready," or on April 25, 2014, when Flint's water source was switched over to the Flint River and residents began receiving Flint River water from their taps. In either circumstance, according to defendants, plaintiffs' complaint was not filed within the six-month statutory notice period and plaintiffs' claims must be dismissed. As the Court of Claims observed, accepting defendants' position would require a finding that *plaintiffs should have filed suit or provided notice at a time when the state itself claims it had no reason to know that the Flint River water was contaminated*. Like the Court of Claims, we are disinclined to accept defendants' position.

* * *

. . . [O]ur Supreme Court has clarified that "the 'wrong' . . . is the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty." Thus, the date on which defendants acted to switch the water is not necessarily the date on which plaintiffs suffered the harm giving

-5-

rise to their causes of action. [*Id.* at ___; slip op at 8 (citation omitted; emphasis added; alterations in original).]

*Mays*, however, was a tort case, not a condemnation proceedings. Here, the harm alleged is the signing of the Crossing Agreement, which occurred in June 2012. And, unlike the plaintiffs in *Mays*, in this case, plaintiffs had reason to know of the harm at the time it occurred. As discussed above, it was apparent that the signing of the Crossing Agreement gave rise to the harms that plaintiffs allege in their complaint. Therefore, their claims accrued when the Crossing Agreement was signed in June 2012.

Plaintiffs also argue that MCL 600.6431(1) does not bar their claims because they are seeking declaratory and injunctive relief. In support, they direct us to the decision in *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119; 537 NW2d 596 (1995). That case, however, did not address applicability of MCL 600.6431(1). Instead, it involved the applicability of a statute of limitations, *Taxpayers*, 450 Mich at 129. Here, in contrast, MCL 600.6431 is a "notice provision" that is a condition precedent to suing the state. See *Fairley*, 497 Mich at 292; *McCahan*, 492 Mich at 736-737. MCL 600.6431(1) prohibits claims against the state "unless the claimant, within 1 year after such claim has accrued" files a claim or a notice of intent to file a claim. As discussed above, the wrong alleged in this case occurred in 2012 when the Crossing Agreement was signed. Plaintiffs' alleged harms flow from the execution of that agreement; thus, plaintiffs' claims accrued when the agreement was signed. Plaintiffs were therefore required to comply with the notice provision in MCL 600.6431(1), and plaintiffs' "failure to comply strictly with this notice provision warrants dismissal of the claim, even if no prejudice resulted." *Rusha*, 307 Mich App at 307.

In sum, plaintiffs had both property and business interests that were impacted by the Crossing Agreement sufficient to show that they had standing to challenge the Crossing Agreement when it was signed in 2012. The previous litigation and the current claims illustrate that the signing of the agreement and the impacts that flow from the Crossing Agreement are the alleged harms that plaintiffs are challenging. Thus, the wrong alleged in this case was the signing of the Crossing Agreement. Plaintiffs' claims therefore accrued in 2012 when the agreement was signed. Accordingly, the Court of Claims did not err in concluding that plaintiffs failed to comply with the notice requirement in MCL 600.6431(1), and the Court of Claims therefore properly dismissed plaintiffs' claims.[3]

Affirmed. Defendants may tax costs as the prevailing party. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[3] Given our resolution of this issue, we decline to address defendants' laches argument and plaintiffs' argument that the Court of Claims erred in holding that it did not have jurisdiction to address challenges to the condemnation proceeding.